## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SHEN WEI (USA), INC., and<br>MEDLINE INDUSTRIES, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>ANSELL HEALTHCARE )<br>PRODUCTS, INC., )<br><br>Defendant. ) | 05 C 6003<br><br>Judge Ronald A. Guzmán |

---

| | |
|---|---|
| SHEN WEI (USA), INC., and<br>MEDLINE INDUSTRIES, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>SEMPERMED, INC., )<br><br>Defendant. ) | 05 C 6004<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Shen Wei (USA), Inc. ("Shen Wei") and Medline Industries, Inc. ("Medline")

have sued defendants Ansell Healthcare Products, Inc. ("Ansell") and Sempermed, Inc.

("Sempermed") for infringement of U.S. Patent No. 6,953,582 B2 ("the '582 Patent"), which is

directed to a skin-enhancing glove and method of manufacture. The case is before the Court for

construction of two claim terms disputed by the parties.[1]

---

[1] The Court only addresses the terms in dispute between plaintiffs Shen Wei and Medline and defendant Ansell.
Defendant Sempermed (in related case 05 C 6004) does not oppose plaintiffs' claim construction arguments.

## Background

On July 1, 2002, Shen Wei filed patent application no. 10/188,500 for a skin-enhancing

glove and method of manufacture. (*See* Exs. Shen Wei's Opening Br. Supp. Claim

Construction, Ex. 1, '582 Patent (filed July 1, 2002).) Initially, the United States Patent and

Trademark Office ("PTO") rejected the claims of this application:

> Claims 1-10 and 12-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Gould (US 6117119). Gould teaches a method of manufacturing a glove, wherein a solution of Aloe Vera is applied to the glove (See abstract and Cols 1-5). Application methods include dipping and there is partial drying since a gelatinous layer is produced on the glove.

(*Id.*, Ex. 8, 2/12/2003 Office Action at SWM000111.) Shen Wei overcame this rejection by

amending the claims to include the word "dry." (*See id.*, Ex. 9, Resp. 2/12/2003 Office Action at

3-4.) Ultimately, the application issued as the '582 Patent.[2]

The abstract of the '582 Patent states:

> A protective glove includes a coating of dehydrated material on its inside surface. The dehydrated material, in contact with perspiration from a hand wearing the glove, soothes the hand. Some methods of placing the coating onto the inside surface of the glove include spraying or dipping with a solution that includes Aloe Vera.

(*See* Exs. Shen Wei's Opening Br. Supp. Claim Construction, Ex. 1, '582 Patent at 1.)

## Discussion

The claims of a patent define the scope of the invention. *Phillips v. AWH Corp.*, 415

F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction is a question of law to be

---

[2] The '582 Patent is a continuation of application no. 09/938,715, filed on August 23, 2001, now U.S. Patent No. 6,630,152 B2 ("the '152 Patent"). The '152 Patent is a continuation-in-part of application no. 09/898,632, filed on July 3, 2001, now U.S. Patent No. 6,423,328 B2 ("the '328 Patent"). The '328 Patent is a continuation of application no. 09/288,067, filed on April 7, 1999, now U.S. Patent No. 6,274,154 B1 ("the '154 Patent").

decided by the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The terms used in a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1313. In determining the ordinary and customary meaning, the Court must first look to the intrinsic evidence, which includes the claims, specification, and prosecution history. *Id.* at 1316-17. Extrinsic evidence, such as dictionaries and expert reports, may also be useful to the court, "but it is unlikely to result in a reliable interpretation . . . unless considered in the context of the intrinsic evidence." *Id.* at 1319.

In their opening claim construction brief, Shen Wei sought to have five claim terms construed while Ansell sought to have two terms construed. Therefore, the Court deems Ansell to have waived its objections to three of the terms. The two disputed terms currently before this Court are: (1) "dry dehydrated preparation"; and (2) "a dry . . . substance that had undergone dehydration, prior to becoming dry."[3] '582 Patent c.8 l.52, c.9 l.20-22.

Shen Wei argues that "dry dehydrated preparation" should be construed to mean "a preparation in which water has been removed, but not necessarily all of the water, so that the preparation does not feel wet when touched." (Pls.' Opening Claim Construction Br. at 6.) Shen Wei argues that "a dry . . . substance that had undergone dehydration, prior to becoming dry" should be construed to mean "a substance in which water has been removed, but not necessarily all of the water, so that the substance does not feel wet when touched." (*Id.* at 9.)

Ansell argues that "dry dehydrated preparation" should be construed to mean "drawing all the liquid from the preparation so as to leave only a substance that is free from liquid or

---

[3] There is a dispute as to the exact wording of the first term. Ansell asks this Court to construe the term "evaporating the liquid carrier from the preparation to form a dry dehydrated preparation," whereas Shen Wei asks the Court to construe the term "dry dehydrated preparation." It is unnecessary to construe Ansell's proposed claim term because the meaning of "dry dehydrated preparation" is the central issue.

3

moisture." (Def.'s Opening Claim Construction Br. at 4.) Ansell argues that "a dry . . . substance that had undergone dehydration, prior to becoming dry" should be construed to mean "a substance from which the liquid has been removed by evaporation so as to leave that substance free from liquid or moisture."

The central issue in dispute between the parties is whether these terms require complete removal of the liquid or simply the removal of enough liquid to leave the preparation dry to the touch. Because the two disputed terms are so closely related, the Court will construe these terms together.

As an initial matter, the term "dehydration/dehydrated" was construed by this Court in a prior lawsuit between the parties. Therefore, if applicable, the doctrine of collateral estoppel would preclude Ansell from relitigating the issue. "Collateral estoppel (also called issue preclusion) refers to the simple principle that later courts should honor the first actual decision of a matter that has been actually litigated." *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997) (quotations omitted). The doctrine of collateral estoppel applies to common issues with regard to parent and child patents. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). These common issues include claim construction. *Id.*

In cases such as this one, where the claim preclusion issues "do not depend on any rule of law having special application to patent cases," courts "apply the law of the regional circuit in which the district court sits." *See Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006) (quotation omitted). In the Seventh Circuit, the doctrine of collateral estoppel is

4

applicable when: "(1) the issue sought to be precluded is the same as that involved in the prior action, (2) that issue was actually litigated, (3) the determination of the issue was essential to the final judgment, and (4) the party against whom estoppel is invoked was fully represented in the prior action." *Chi. Truck Drivers*, 125 F.3d at 530.

In a prior lawsuit, Shen Wei sued Ansell for infringement of U.S. Patent No. 6,423,328 B2 ("the '328 Patent"). *Shen Wei v. Ansell Healthcare Prods.*, No. 03 C 567, 2004 WL 1102406, at *1 (N.D. Ill. May 3, 2004). The '328 Patent, which is directed to an Aloe Vera glove and manufacturing method, is a parent of the '582 Patent. *See* U.S. Patent No. 6,423,328 B2 (filed July 3, 2001). The abstract of the '328 Patent states:

> A moisturizing and therapeutic glove is disclosed which includes a thin layer of Aloe Vera coated evenly and uniformly on an inside surface of the glove. Aloe Vera is attached to the surface through a dehydration process achieved with a controlled drying method. Aloe Vera soothes hand during the wearing of the glove.

*Id.*

In the prior lawsuit, as part of a motion for summary judgment, Ansell asked the court to construe the term "dehydration/dehydrated" to mean the removal of all water. *Shen Wei*, 2004 WL 1102406, at *5. Judge Holderman rejected Ansell's proposed construction and instead construed the term to mean "the removal of water, but not necessarily all water." *Id.*

The prior lawsuit between the parties satisfies the four factors of collateral estoppel. First, Ansell's proposed claim construction of the term "dehydrate" in this lawsuit is the same as its proposed construction in the action before Judge Holderman. Second, the issue was actually litigated as part of a motion for summary judgment of noninfringement. *See id.* Third, the claim construction of the term "dehydration/dehydrate" was essential to the court's decision to deny Ansell's motion. *Id.* Lastly, Ansell was fully represented in the prior action because it was a

party in that suit. *Id.* Because all four factors of the doctrine of collateral estoppel have been

met, Ansell is precluded from advancing the same construction of the term "dehydrate" in this

action as it did in the previous one. Even if collateral estoppel were inapplicable, this Court

finds Judge Holderman's reasoning persuasive because the term "dehydrate" as used in the '582

Patent cannot be interpreted in a manner that requires the removal of all water. Therefore, this

Court holds that the term "dehydrate" means the removal of water, but not necessarily all water.

Now that the Court has determined the meaning of the word "dehydrate," the only issue

is to determine the affect of the word "dry" on the meaning of the term "dehydrate." When

looking at the intrinsic evidence, "the claims themselves provide substantial guidance as to the

meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The claim terms must be

considered in the context of the surrounding language of the claim. *Id.* In this case, the Court

does not find the claim language helpful in determining the meaning of the disputed claim

terms.[4]

In addition to looking at the claims themselves, the Court must read the claims in light of

the specification. *Id.* at 1315. The specification is often times the single best guide to

determining the meaning of a disputed term. *Id.* When looking at the specification, the Federal

---

[4] Independent claims 1 and 13 are good examples of the use of the terms in the claims. The two claims are as
follows:

> 1. A method of manufacturing an enhanced disposable glove, the method comprising the acts of:
> applying a preparation onto a surface of a fluid-impermeable disposable glove, the preparation
> including a skin-conditioning substance, the surface of the glove to face a hand during wearing of the
> glove on the hand, the surface hereinafter referred to as interior surface, and evaporating the liquid
> carrier from the preparation to form a dry dehydrated preparation attached to the interior surface of
> the glove, so that the dehydrated preparation contacts the hand during wearing of the glove on the
> hand.
>
> 13. An article for protecting a hand, the article comprising: a disposable examination glove that is
> fluid-impermeable; and a coating on a surface of the disposable examination glove, the coating
> including a dry skin-moisturizing substance that had undergone dehydration, prior to becoming dry,
> while on the surface not the disposable examination glove, wherein, the coating contacts a hand during
> donning of the article onto the hand, and the coating absorbs moisture from perspiration when worn
> on the hand to form a moistened skin-moisturizing substance.

'582 Patent col.8 l.42-55 and col.9 l.14-26.

Circuit cautions against reading limitations from the specification into the claims. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998). In this case, the specification does not expressly define the disputed terms. However, one particular passage in the specification sheds light on the meaning of the terms. In describing one of the embodiments of the invention, the specification states:

> The method comprises forming a glove on a mold; applying a solution that includes Aloe Vera onto the glove while the glove is on the mold; *at least partially drying the solution* that has been applied onto the glove while the glove is on the mold; and removing the glove from the mold.

'582 Patent col.2 1.52-57 (emphasis added). This passage of the specification demonstrates that the inventor contemplated and identified varying degrees of drying. It would be inappropriate to construe narrowly the claim term to require the removal of all liquid simply because the claim does not specify the degree of drying. This passage describes one embodiment of the invention. The claim terms must be construed to cover this embodiment. Ansell's proposed claim construction would not cover this particular embodiment because in this embodiment the inventor clearly used language that suggests that all of the water is not removed. Therefore, Ansell's proposed construction of the term is inconsistent with the specification.

In this case, the prosecution history is the most informative as to the meaning of the disputed term. "The prosecution history . . . consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* The prosecution history is important to claim construction because it

demonstrates the scope of the invention that was disclaimed during prosecution. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

The prosecution history of the '582 Patent is instructive as to the effect of the word "dry" on the meaning of "dehydrate." The patent examiner rejected Shen Wei's initial application as being obvious in light of the Gould prior art which disclosed a method of manufacturing a glove with a gelatinous layer. The examiner specifically stated that the gelatinous layer disclosed in Gould required partial drying. In response to the examiner's rejection, Shen Wei amended the claims to include the word "dry" and stated that "Gould specifically teaches a wet formulation in which the wetness is essential. Accordingly it is seen that Gould *teaches away* from the 'dry' preparation of the present claims, as amended." (Exs. Shen Wei's Opening Br. Supp. Claim Construction, Ex. 9, 5/07/2003 Amendment Resp. Office Action Dated 2/21/2003 at SWM000167.) The examiner allowed the amended claims to issue in the '582 Patent.

The communications between Shen Wei and the examiner, along with the amendments to the claims, provide valuable insight into Shen Wei's intentions. From this evidence it is obvious that Shen Wei did not intend the addition of the word "dry" to mean the removal of all liquid as Ansell would have this Court believe. Clearly Shen Wei amended the claims to include the word "dry" in an attempt to distinguish its invention from the prior art, which disclosed a wet gelatinous layer.

Shen Wei's proposed claim construction is consistent with the intrinsic evidence. The prosecution history shows that the addition of the word "dry" was intended to distinguish the current invention from the prior art by establishing that the current invention does not feel wet. There is no evidence in the claims, specification, or prosecution history to support Ansell's strained interpretation of the claim terms.

8

Although the Court relied on the intrinsic evidence to construe the claim terms, the Court notes that Shen Wei has submitted an uncontested expert report. The report was created by Mr. James D. McFadden ("McFadden"), who has over thirty years of experience in the rubber glove industry. (Exs. Shen Wei's Opening Br. Supp. Claim Construction, Ex. 2, McFadden Report Regarding Claim Construction at 2.) In his report, McFadden stated:

> A substance that has had 100% of its water removed can only exist in an environment with controlled atmospheric conditions. The '582 patent does not describe such an environment. Instead, the '582 patent describes a method for manufacturing skin-enhancing gloves in a real-world manufacturing environment – such an environment would not allow for the creation or maintenance of a substance that is 100% free of water.

(*Id.* at 7.) This expert report is consistent with the Court's construction of the terms. If Shen Wei had intended "dry dehydrated preparation" to mean a substance that had all of its water removed, Shen Wei would have specified a method of manufacture with controlled atmospheric conditions in the patent. In light of this expert report, Ansell's proposed construction is too narrow and inconsistent with the intrinsic evidence.

For the foregoing reasons, the term "dry dehydrated preparation" means "a preparation in which water has been removed, but not necessarily all of the water, so that the preparation does not feel wet when touched" and the term "a dry . . . substance that had undergone dehydration, prior to becoming dry" means "a substance in which water has been removed, but not necessarily all of the water, so that the substance does not feel wet when touched."

## Conclusion

For the foregoing reasons, the Court issues its claim construction as to two disputed terms in the '582 Patent: (1) the term "dry dehydrated preparation" means "a preparation in which water has been removed, but not necessarily all of the water, so that the preparation does not feel wet when touched" and (2) the term "a dry . . . substance that had undergone dehydration, prior to becoming dry" means "a substance in which water has been removed, but not necessarily all of the water, so that the substance does not feel wet when touched."

**SO ORDERED.**                                    ENTERED:    5/29/08

HON. RONALD A. GUZMAN
**United States District Judge**

10